IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: :
: CASE NO. 1:10-bk-1095 RNO
JAMES FRANCIS THOMAS :
: CHAPTER 13
:
Debtor :
*************************************************************************
JAMES FRANCIS THOMAS :
:
Plaintiff :
:
v. :
:
AARON'S INC. and : ADVERSARY NO. 1:10-ap-00114 RNO
KFJ ENTERPRISES, LLC, d/b/a :
AARON'S :
:
Defendants :

# Opinion[1]

This Adversary Proceeding was commenced by the Plaintiff's three count Complaint filed on March 19, 2010. On April 1, 2010, the Plaintiff filed an Amended Complaint. Presently before this Court is Aaron's Inc.'s Motion to Dismiss Plaintiff's Amended Complaint. For the reasons stated herein, the Motion is denied.

**I.    Dismissal Standard**

". . . [O]n a Rule 12(b)(6) motion, the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-1965,

---

[1] Drafted with the assistance of William C. Blasses, Esquire, Law Clerk

1

1969 n. 8, 167 L.Ed.2d 929 (2007)). To survive a Rule 12(b)(6) motion, the pleadings must show plausibility. *Id*. at 234. ". . . [T]he '[f]actual allegations must be enough to raise a right to relief above the speculative level.' " *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S.Ct. at 1965).

"[The standard] 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S.Ct. at 1965 (2007)). In reviewing the complaint, the court must ". . . read [the] allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading indicates that relief may be warranted." *Umland v. PLANCO Financial Services, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (referencing *Phillips*, 515 F.3d at 233).

**II.    Facts**

Plaintiff, James Francis Thomas (hereinafter "Mr. Thomas"), filed for Chapter 13 relief on February 12, 2010. On March 19, 2010, Mr. Thomas filed this Adversary Proceeding against Aaron's Inc. and KFJ Enterprises d/b/a Aaron's (hereinafter collectively "Aaron's"). On April 1, 2010, Mr. Thomas filed his Amended Complaint. The Amended Complaint contains three counts and alleges violations of the automatic stay, violation of Pennsylvania's Fair Credit Extension Uniformity Act, and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. The two Complaints' factual averments are similar as to all counts. None of the averments discussed below represents a finding of fact by this Court, rather they are discussed solely for the purpose of deciding the present Motion.

According to the Amended Complaint, Mr. Thomas entered into a lease/purchase

2

agreement with Aaron's for a television and mattress. Am. Compl. ¶ 9. After filing his Chapter 13 bankruptcy petition, Case Number 1:10-bk-01095, Mr. Thomas made a Motion to Extend the Automatic Stay. Am. Compl. ¶ 12; see also Docket Number 8 in Case Number 1:10-bk-01095. After no objections or responses were made, an Order was entered granting the Motion. Am. Compl. ¶ 15; see also Docket Number 18 in Case Number 1:10-bk-01095.

The remaining averments generally chronicle the alleged occurrence that gave rise to the Amended Complaint's three counts. Mr. Thomas alleges that an employee from Aaron's visited Mr. Thomas's residence and indicated that he was attempting to repossess a television and a mattress. Am. Compl. ¶¶ 16-18. Mr. Thomas told the employee that he had filed for bankruptcy and to contact his attorney. Am. Compl. ¶ 18. Mr. Thomas shut the front door and the employee began banging on the door and yelling. Am. Compl. ¶¶ 19-20. Mr. Thomas then opened the door again and told the employee to leave, but the Aaron's employee refused to leave. Am. Compl. ¶ 21. The Aaron's employee instead started yelling taunts including "You're gonna pull a gun on me, aren't you?" Am. Compl. ¶ 21. Mr. Thomas opened the door and told the Aaron's employee that he would not fight him and that he did have a hand gun in the house. Am. Compl. ¶ 22.

While the door was open, the Aaron's employee threw a paper inside Mr. Thomas's house that had the words "Repossession Notice" in large bold font. Am. Compl. ¶¶ 22 & 24. The bottom part of the "Repossession Notice" was apparently signed by two different employees and dated February 27, 2010. Am. Compl. ¶ 25. It is alleged that the Aaron's employee continued to pound on the door and shout that Mr. Thomas had to return the television and mattress "right now". Am. Compl. ¶ 27. Mr. Thomas responded that the notice gave him seven

3

days to return the merchandise and that he would discuss the matter with his bankruptcy counsel during that time and get back to him. Am. Compl. ¶ 28. The employee refused to leave and told Mr. Thomas that if he did not give him the merchandise right away, then the employee was going to call the police. Am. Compl. ¶ 29. Approximately one half hour later, approximately fifteen to twenty police cars, including a canine unit, showed up at Mr. Thomas's house. Am. Compl. ¶ 31.

Approximately ten minutes after the cars and canine unit arrived, Mr. Thomas received a telephone call from a policewoman that requested that Mr. Thomas go outside in front of his house. Am. Compl. ¶¶ 34-35. Mr. Thomas went outside and was met by a female police officer who asked him if he owned a gun. Am. Compl. ¶¶ 36-37. He responded affirmatively. Am. Compl. ¶ 37. The officer then asked if the gun was registered and whether Mr. Thomas had a permit, and Mr. Thomas replied affirmatively to both of those questions. Am. Compl. ¶ 38. Mr. Thomas was told by the officer that the Aaron's employee had contacted the police and told them that Mr. Thomas had threatened to shoot him. Am. Compl. ¶ 39. After the officer requested to see the gun, Mr. Thomas showed them where he kept the gun. Am. Compl. ¶ 40. Mr. Thomas also showed the police the television and mattress subject to the lease/purchase agreement with Aaron's. Am. Compl. ¶ 41.

After telling the policewoman that Aaron's was a creditor in his bankruptcy proceedings, the policewoman told him that he could not include the television or mattress in bankruptcy. Am. Compl. ¶ 42. Mr. Thomas then told the policewoman that his attorney had advised him that the television and mattress could be included in a bankruptcy, but the policewoman told him that the attorney was misinformed. Am. Compl. ¶ 43. Four officers questioned Mr. Thomas in his

4

dining room. Am. Compl. ¶ 44. At least one of the officers had taken the strap off of his gun and had his hand on the holder. Am. Compl. ¶ 44. Another officer was at his front door. Am. Compl. ¶ 44. The policewoman informed Mr. Thomas that he would be arrested for theft if he held onto the merchandise. Am. Compl. ¶ 45. The policewoman told him that the arrest would probably be for a felony because of the value of the television and mattress and that Mr. Thomas would spend five to ten years in jail. Am. Compl. ¶ 45.

The policewoman also told him that even after getting out of jail, he would have a criminal record which would affect his employability and ruin his credit. Am. Compl. ¶ 47. Mr. Thomas told the policewoman that he did not want to go to jail but thought that Aaron's was not allowed to ignore the bankruptcy laws. Am. Compl. ¶ 48. The police officer told him to give the television and mattress back to Aaron's or face a felony. Am. Compl. ¶ 49. Mr. Thomas carried the television and mattress to the front door, where several Aaron's employees took them away. Am. Compl. ¶ 49. Subsequently, five or six of Mr. Thomas' neighbors called to make sure that he was all right. Am. Compl. ¶ 50. One of the policemen told Mr. Thomas that the police had "done this" before for Aaron's. Am. Compl. ¶ 53.

### III. Discussion

In assessing whether to grant Aaron's Motion to Dismiss, this Court looks to the sufficiency of the Amended Complaint. Aaron's Motion to Dismiss argues solely that the Plaintiff has not pled any facts attributing the conduct described within the Amended Complaint to Aaron's. Rather, Aaron's argues that it and KFJ Enterprises, LLC d/b/a Aaron's ("KFJ") are two distinct legal entities. Aaron's further argues that the Amended Complaint's allegations relate solely to the conduct of KFJ and one of its employees. It, therefore, requests the Amended

5

Case 1:10-ap-00114-RNO    Doc 16    Filed 07/21/10    Entered 07/21/10 15:55:39    Desc
Main Document    Page 5 of 16

Complaint to be dismissed as it relates to Aaron's.

In response, Mr. Thomas argues that the Defendants, Aaron's and KFJ, are referred to interchangeably as "Aaron's" within the Amended Complaint, as referenced in the first sentence of Paragraph 8 in the Amended Complaint. Mr. Thomas also notes that in Paragraph 2 of the his Answer to Aaron's Motion to Dismiss, that the he admits advancing the same claims against both Aaron's and KFJ.

I do find that the reference in Paragraph 8 of the Amended Complaint does, in fact, put Aaron's on notice that all claims and allegations referenced in the Amended Complaint were advanced against both Aaron's and KFJ. While Paragraph 8 could have been written in a clearer fashion, the context, in light of the rest of the Amended Complaint, leads me to find that the reasonable inference is that the intent behind the sentence was to refer to both Defendants collectively. The first sentence of Paragraph 8 reads, "[t]he Defendants are Aaron's Inc. and KFJ Enterprises, LLC, d/b/a Aaron's ('Aaron's')". Am. Compl. ¶ 8. In isolation, one could speculate as to whether the reference to "Aaron's" solely referred to KFJ or both Defendants. However, such an interpretation would be awkward and strained given that the remaining sixty-eight paragraphs of the Amended Complaint only refer to Aaron's or "the Defendant".[2] Given the context of the Amended Complaint, I find that a reasonable inference is that "Aaron's", within the Amended Complaint, refers to both Aaron's and KFJ. The use of "Aaron's" within the remainder of the Amended Complaint to equally apply the allegations to both parties is sufficient to put Aaron's on notice of the claims advanced against it and the facts alleged in

---

[2] For whatever reason, the Amended Complaint only refers to "the Defendants" in paragraphs 1 and 8. Thereafter, it refers to a singular entity, "the Defendant". While KFJ and Aaron's appear to be two separate and distinct entities, referencing them together under the designation "Aaron's" would also be consistent with Mr. Thomas's reference in the Amended Complaint's wherefore clause to the "Defendant" rather than "Defendants".

support of each count.

In its Brief, Aaron's also asserted that the Debtor cannot sue a franchisor based upon alleged actions solely conducted by its franchisee. Notably, while Aaron's cited many cases referencing the heightened pleading standard from *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-1965, 1969 n. 8, 167 L.Ed.2d 929 (2007), Aaron's did not cite any cases supporting its argument as to pleading standards concerning causes of actions against franchisors. Furthermore, I find such argument to be inapplicable given that Mr. Thomas has pled the exact same facts and causes of action against Aaron's.

As referenced above in the "Dismissal Standard", the standards for a motion to dismiss require me to consider the allegations in the Amended Complaint, but not to assess the probability that Mr. Thomas can and will produce evidence to support such pleadings. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The pleading standard to survive a motion to dismiss merely requires that a plaintiff ". . . mak[e] a sufficient showing of enough factual matter (taken as true) to suggest the required elements of the [plaintiff's] claims." *Id.* at 235.

In *Ashcroft v. Iqbal*, the Supreme Court recently reinforced and clarified the new pleading standard. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (U.S. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). ". . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (referring to *Bell Atlantic Corp. v.*

7

*Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)).

In the present case, rather than providing labels and conclusions, Mr. Thomas has a seventy-six paragraph Amended Complaint which describes the offending events with great detail as outlined in the Facts above. Aaron's Motion and supporting documents do not challenge the sufficiency of the facts alleged to support each cause of action. Essentially, Aaron's argues that the Amended Complaint does not allege any facts linking Aaron's to the activity alleged in the Amended Complaint. As I have found that the Amended Complaint alleges the same facts against both Aaron's and KFJ, the Motion to Dismiss is, therefore, denied.

## IV. Conclusion

For the reasons set forth above, I deny Aaron's Inc.'s Motion to Dismiss Plaintiff's Amended Complaint. I will allow the Defendant, Aaron's Inc., fourteen (14) days to answer the Amended Complaint. An order will be entered consistent with this Opinion.

By the Court,

Date: July 21, 2010

Robert N. Opel, II, Bankruptcy Judge
(BI)

*This opinion is electronically signed and filed on the same date.*

8

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CASE NO. 1:10-bk-1095 RNO |
| JAMES FRANCIS THOMAS | : | |
| | : | CHAPTER 13 |
| Debtor | : | |

*************************************************************************

| | | |
|---|---|---|
| JAMES FRANCIS THOMAS | : | |
| Plaintiff | : | |
| v. | : | |
| AARON'S INC. and | : | ADVERSARY NO. 1:10-ap-00114 RNO |
| KFJ ENTERPRISES, LLC, d/b/a | : | |
| AARON'S | : | |
| Defendants | : | |

# <u>Opinion</u>[1]

This Adversary Proceeding was commenced by the Plaintiff's three count Complaint filed on March 19, 2010. On April 1, 2010, the Plaintiff filed an Amended Complaint. Presently before this Court is Aaron's Inc.'s Motion to Dismiss Plaintiff's Amended Complaint. For the reasons stated herein, the Motion is denied.

**I.   Dismissal Standard**

". . . [O]n a Rule 12(b)(6) motion, the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-1965,

---

[1]   Drafted with the assistance of William C. Blasses, Esquire, Law Clerk

1

1969 n. 8, 167 L.Ed.2d 929 (2007)). To survive a Rule 12(b)(6) motion, the pleadings must show plausibility. *Id*. at 234. ". . . [T]he '[f]actual allegations must be enough to raise a right to relief above the speculative level.' " *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S.Ct. at 1965).

"[The standard] 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S.Ct. at 1965 (2007)). In reviewing the complaint, the court must ". . . read [the] allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading indicates that relief may be warranted." *Umland v. PLANCO Financial Services, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (referencing *Phillips*, 515 F.3d at 233).

## II. Facts

Plaintiff, James Francis Thomas (hereinafter "Mr. Thomas"), filed for Chapter 13 relief on February 12, 2010. On March 19, 2010, Mr. Thomas filed this Adversary Proceeding against Aaron's Inc. and KFJ Enterprises d/b/a Aaron's (hereinafter collectively "Aaron's"). On April 1, 2010, Mr. Thomas filed his Amended Complaint. The Amended Complaint contains three counts and alleges violations of the automatic stay, violation of Pennsylvania's Fair Credit Extension Uniformity Act, and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. The two Complaints' factual averments are similar as to all counts. None of the averments discussed below represents a finding of fact by this Court, rather they are discussed solely for the purpose of deciding the present Motion.

According to the Amended Complaint, Mr. Thomas entered into a lease/purchase

2

agreement with Aaron's for a television and mattress. Am. Compl. ¶ 9. After filing his Chapter 13 bankruptcy petition, Case Number 1:10-bk-01095, Mr. Thomas made a Motion to Extend the Automatic Stay. Am. Compl. ¶ 12; see also Docket Number 8 in Case Number 1:10-bk-01095. After no objections or responses were made, an Order was entered granting the Motion. Am. Compl. ¶ 15; see also Docket Number 18 in Case Number 1:10-bk-01095.

The remaining averments generally chronicle the alleged occurrence that gave rise to the Amended Complaint's three counts. Mr. Thomas alleges that an employee from Aaron's visited Mr. Thomas's residence and indicated that he was attempting to repossess a television and a mattress. Am. Compl. ¶¶ 16-18. Mr. Thomas told the employee that he had filed for bankruptcy and to contact his attorney. Am. Compl. ¶ 18. Mr. Thomas shut the front door and the employee began banging on the door and yelling. Am. Compl. ¶¶ 19-20. Mr. Thomas then opened the door again and told the employee to leave, but the Aaron's employee refused to leave. Am. Compl. ¶ 21. The Aaron's employee instead started yelling taunts including "You're gonna pull a gun on me, aren't you?" Am. Compl. ¶ 21. Mr. Thomas opened the door and told the Aaron's employee that he would not fight him and that he did have a hand gun in the house. Am. Compl. ¶ 22.

While the door was open, the Aaron's employee threw a paper inside Mr. Thomas's house that had the words "Repossession Notice" in large bold font. Am. Compl. ¶¶ 22 & 24. The bottom part of the "Repossession Notice" was apparently signed by two different employees and dated February 27, 2010. Am. Compl. ¶ 25. It is alleged that the Aaron's employee continued to pound on the door and shout that Mr. Thomas had to return the television and mattress "right now". Am. Compl. ¶ 27. Mr. Thomas responded that the notice gave him seven

3

days to return the merchandise and that he would discuss the matter with his bankruptcy counsel during that time and get back to him. Am. Compl. ¶ 28. The employee refused to leave and told Mr. Thomas that if he did not give him the merchandise right away, then the employee was going to call the police. Am. Compl. ¶ 29. Approximately one half hour later, approximately fifteen to twenty police cars, including a canine unit, showed up at Mr. Thomas's house. Am. Compl. ¶ 31.

Approximately ten minutes after the cars and canine unit arrived, Mr. Thomas received a telephone call from a policewoman that requested that Mr. Thomas go outside in front of his house. Am. Compl. ¶¶ 34-35. Mr. Thomas went outside and was met by a female police officer who asked him if he owned a gun. Am. Compl. ¶¶ 36-37. He responded affirmatively. Am. Compl. ¶ 37. The officer then asked if the gun was registered and whether Mr. Thomas had a permit, and Mr. Thomas replied affirmatively to both of those questions. Am. Compl. ¶ 38. Mr. Thomas was told by the officer that the Aaron's employee had contacted the police and told them that Mr. Thomas had threatened to shoot him. Am. Compl. ¶ 39. After the officer requested to see the gun, Mr. Thomas showed them where he kept the gun. Am. Compl. ¶ 40. Mr. Thomas also showed the police the television and mattress subject to the lease/purchase agreement with Aaron's. Am. Compl. ¶ 41.

After telling the policewoman that Aaron's was a creditor in his bankruptcy proceedings, the policewoman told him that he could not include the television or mattress in bankruptcy. Am. Compl. ¶ 42. Mr. Thomas then told the policewoman that his attorney had advised him that the television and mattress could be included in a bankruptcy, but the policewoman told him that the attorney was misinformed. Am. Compl. ¶ 43. Four officers questioned Mr. Thomas in his

4

dining room. Am. Compl. ¶ 44. At least one of the officers had taken the strap off of his gun and had his hand on the holder. Am. Compl. ¶ 44. Another officer was at his front door. Am. Compl. ¶ 44. The policewoman informed Mr. Thomas that he would be arrested for theft if he held onto the merchandise. Am. Compl. ¶ 45. The policewoman told him that the arrest would probably be for a felony because of the value of the television and mattress and that Mr. Thomas would spend five to ten years in jail. Am. Compl. ¶ 45.

The policewoman also told him that even after getting out of jail, he would have a criminal record which would affect his employability and ruin his credit. Am. Compl. ¶ 47. Mr. Thomas told the policewoman that he did not want to go to jail but thought that Aaron's was not allowed to ignore the bankruptcy laws. Am. Compl. ¶ 48. The police officer told him to give the television and mattress back to Aaron's or face a felony. Am. Compl. ¶ 49. Mr. Thomas carried the television and mattress to the front door, where several Aaron's employees took them away. Am. Compl. ¶ 49. Subsequently, five or six of Mr. Thomas' neighbors called to make sure that he was all right. Am. Compl. ¶ 50. One of the policemen told Mr. Thomas that the police had "done this" before for Aaron's. Am. Compl. ¶ 53.

### III. Discussion

In assessing whether to grant Aaron's Motion to Dismiss, this Court looks to the sufficiency of the Amended Complaint. Aaron's Motion to Dismiss argues solely that the Plaintiff has not pled any facts attributing the conduct described within the Amended Complaint to Aaron's. Rather, Aaron's argues that it and KFJ Enterprises, LLC d/b/a Aaron's ("KFJ") are two distinct legal entities. Aaron's further argues that the Amended Complaint's allegations relate solely to the conduct of KFJ and one of its employees. It, therefore, requests the Amended

Complaint to be dismissed as it relates to Aaron's.

In response, Mr. Thomas argues that the Defendants, Aaron's and KFJ, are referred to interchangeably as "Aaron's" within the Amended Complaint, as referenced in the first sentence of Paragraph 8 in the Amended Complaint. Mr. Thomas also notes that in Paragraph 2 of the his Answer to Aaron's Motion to Dismiss, that the he admits advancing the same claims against both Aaron's and KFJ.

I do find that the reference in Paragraph 8 of the Amended Complaint does, in fact, put Aaron's on notice that all claims and allegations referenced in the Amended Complaint were advanced against both Aaron's and KFJ. While Paragraph 8 could have been written in a clearer fashion, the context, in light of the rest of the Amended Complaint, leads me to find that the reasonable inference is that the intent behind the sentence was to refer to both Defendants collectively. The first sentence of Paragraph 8 reads, "[t]he Defendants are Aaron's Inc. and KFJ Enterprises, LLC, d/b/a Aaron's ('Aaron's')". Am. Compl. ¶ 8. In isolation, one could speculate as to whether the reference to "Aaron's" solely referred to KFJ or both Defendants. However, such an interpretation would be awkward and strained given that the remaining sixty-eight paragraphs of the Amended Complaint only refer to Aaron's or "the Defendant".[2] Given the context of the Amended Complaint, I find that a reasonable inference is that "Aaron's", within the Amended Complaint, refers to both Aaron's and KFJ. The use of "Aaron's" within the remainder of the Amended Complaint to equally apply the allegations to both parties is sufficient to put Aaron's on notice of the claims advanced against it and the facts alleged in

---

[2] For whatever reason, the Amended Complaint only refers to "the Defendants" in paragraphs 1 and 8. Thereafter, it refers to a singular entity, "the Defendant". While KFJ and Aaron's appear to be two separate and distinct entities, referencing them together under the designation "Aaron's" would also be consistent with Mr. Thomas's reference in the Amended Complaint's wherefore clause to the "Defendant" rather than "Defendants".

support of each count.

In its Brief, Aaron's also asserted that the Debtor cannot sue a franchisor based upon alleged actions solely conducted by its franchisee. Notably, while Aaron's cited many cases referencing the heightened pleading standard from *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-1965, 1969 n. 8, 167 L.Ed.2d 929 (2007), Aaron's did not cite any cases supporting its argument as to pleading standards concerning causes of actions against franchisors. Furthermore, I find such argument to be inapplicable given that Mr. Thomas has pled the exact same facts and causes of action against Aaron's.

As referenced above in the "Dismissal Standard", the standards for a motion to dismiss require me to consider the allegations in the Amended Complaint, but not to assess the probability that Mr. Thomas can and will produce evidence to support such pleadings. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The pleading standard to survive a motion to dismiss merely requires that a plaintiff ". . . mak[e] a sufficient showing of enough factual matter (taken as true) to suggest the required elements of the [plaintiff's] claims." *Id.* at 235.

In *Ashcroft v. Iqbal*, the Supreme Court recently reinforced and clarified the new pleading standard. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (U.S. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). ". . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (referring to *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)).

In the present case, rather than providing labels and conclusions, Mr. Thomas has a seventy-six paragraph Amended Complaint which describes the offending events with great detail as outlined in the Facts above. Aaron's Motion and supporting documents do not challenge the sufficiency of the facts alleged to support each cause of action. Essentially, Aaron's argues that the Amended Complaint does not allege any facts linking Aaron's to the activity alleged in the Amended Complaint. As I have found that the Amended Complaint alleges the same facts against both Aaron's and KFJ, the Motion to Dismiss is, therefore, denied.

## IV. Conclusion

For the reasons set forth above, I deny Aaron's Inc.'s Motion to Dismiss Plaintiff's Amended Complaint. I will allow the Defendant, Aaron's Inc., fourteen (14) days to answer the Amended Complaint. An order will be entered consistent with this Opinion.

By the Court,

_____
Robert N. Opel, II, Bankruptcy Judge
(BI)

Date: July 21, 2010

*This opinion is electronically signed and filed on the same date.*

8